# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **BRENDA D. TESTERMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:04CV00106 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JO ANN B. BARNHART,** | ) | By: James P. Jones |
| **COMMISSIONER** | ) | Chief United States District Judge |
| **OF SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

In this social security case, I affirm the final decision of the Commissioner.

## *I. Background.*

Brenda D. Testerman filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2004) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the

Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Testerman applied for benefits on June 2, 2003, alleging disability as of May 15, 2003, due to left knee pain, right foot pain, epilepsy, dizzy spells, and back pain. The claim was denied initially and on reconsideration, and a request for hearing was timely filed. After an administrative hearing, in an opinion dated April 22, 2004, the administrative law judge ("ALJ") found that although plaintiff could no longer perform any of her past relevant work, she could nevertheless perform a limited range of light work and was not disabled. The Social Security Administration's Appeals Council ("Appeals Council") denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

Plaintiff filed this action on September 29, 2004, seeking judicial review of the Commissioner's decision denying her application for benefits. The parties have filed cross motions for summary judgment and briefed the issues; therefore, the case is now ripe for decision.

- 2 -

## II. Facts.

The plaintiff was forty-seven years old at the time of the ALJ's decision, a younger individual under the regulations. She has a tenth grade education and past relevant work experience as a motel maid, a mill worker, a packer, and a housekeeper. Testerman has not worked since the alleged onset date of disability.

In denying the plaintiff's claim for disability, the ALJ considered medical evidence from Johnston Memorial Hospital, Saltview Medical Center, W. Christopher Winter, M.D., and Carey McKain, M.D., as well as the reports of state agency medical consultants. The ALJ also considered evidence from Robert Spangler, a vocational expert ("VE"), who testified at the administrative hearing.

Plaintiff first presented to Johnston Memorial Hospital on February 27, 2001, complaining of back pain. (R. at 125.) She rated the pain a "five" on a scale of one to ten. (R. at 126.) A straight leg-raising evaluation was normal. (R. at 128.) The plaintiff was diagnosed with acute myfascial strain and provided with some pain medication. (*Id*.)

Testerman was treated at Saltview Medical Center between December 2001 and July 2003 for knee, hip, and buttock pain, as well as coughs and colds. (R. at 19.) Particularly relevant to this case are office visit notes from May 15, 2002, which indicate that the claimant presented with back pain after moving furniture at home.

- 3 -

(R. at 153.)  The pain was localized mainly on the right side of the lower back and right buttock, hip, and thigh.  (*Id*.)  She was diagnosed with a low back strain with pain radiating in the right buttock and hip, as well as obesity and a history of both arthritis and epilepsy.  (*Id*.)

The plaintiff returned to Johnston Memorial Hospital on August 23, 2002, reporting that she injured her right shoulder when she fell going up concrete steps.  (R. at 165.)  An X ray showed inferior spurs at the AC joint but no fracture or dislocation.  (R. 168.)  She was diagnosed with a right shoulder contusion.  (R. at 165.)

On October 10, 2002, W. Christopher Winter, M.D., a neurologist, evaluated the plaintiff as a follow-up for her juvenile epilepsy.  (R. at 178.)  Dr. Winter indicated that the plaintiff had not had seizures since her last visit, she was normal neurologically, and was doing well on her medication.  (*Id*.)  She had gianed fifty pounds since 1998, and her biggest problem appeared to be with her weight and arthritis.  (*Id*.)  Her general physical exam apart from her obesity was relatively unremarkable, although her range of motion in her knees and right elbow in particular was very poor and limited by pain.  (*Id*.)  Her gait was normal but she walked with a limp.  (*Id*.)  Additionally, she had difficulty getting out of a chair without using her arms.  (*Id*.)

- 4 -

Carey McKain, M.D., treated Testerman on March 3, 2003, and reported that she was doing reasonably well with about fifty percent improvement on her Synvisc. (R. at 180.) Her right knee was hurting and she was considering injections. (*Id*.) She was instructed to call if symptom worsened or other problems arose. (*Id*.) In another visit on April 7, 2003, Dr. McKain reported that the plaintiff was "doing extremely well with her Synvise" and that she had "improved over the 45-50% given in March." (*Id*.) Her greatest complaint was in her right ankle, and Dr. McKain injected the ankle joint with Lidocaine and Celestone. (*Id*.) On April 29, 2003, an X ray showed lumbar spondylosis with scoliosis convexity right. (R. at 181.)

On July 6, 2003, plaintiff again visited Johnston Memorial Hospital, complaining of back pain and left lower quadrant pain. (R. at 133.) She had mild tenderness in her abdomen, and lumbar X rays showed degenerative changes. (R. at 134-35.) A CAT scan of the plaintiff's abdomen showed that she had gall stones. (R. at 131, 136.)

On July 9, 2003, Randall Hays, M.D., a state agency physician, evaluated the medical record and reported that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk, or sit about six hours in an eight hour day. (R. at 189.)

On August 21, 2003, Dr. McKain reported that the plaintiff was having some back problems and knee pain. (R. at 179.) Dr. McKain also noted at this time that the plaintiff had lost her job because they would not let her work under restrictions. (*Id*.) On January 21, 2004, Dr. McKain completed a residual functional capacity form, finding that the plaintiff could lift up to ten pounds occasionally, stand or walk for two hours in an eight-hour day, and sit for six hours in an eight-hour day. (R. at 200.) Dr. McKain found that she could bend and reach occasionally, but never squat, crawl, or climb. (*Id*.)

Robert Spangler, a VE, appeared and testified at the administrative hearing. (R. at 233.) The ALJ presented a hypothetical individual of the plaintiff's age, education, and work experience. (R. at 234.) The ALJ further asked the VE to assume that this individual could lift twenty pounds occasionally and ten pounds frequently, could stand for two hours in an eight hour day, could sit for six hours in an eight hour day, could stand or walk for only one hour at a time, and could not perform work at unprotected heights or around dangerous machinery. (*Id*.) The VE indicated that an individual with these limitations could perform work as a interviewer, library clerk, factory messenger, production coordinator, production machine tender, and nonconstruction laborer, and that these jobs were available in

- 6 -

significant numbers in the national and regional economy. (R. at 235.) The plaintiff also testified at the administrative hearing.

Based upon the evidence, the ALJ determined that Testerman's left knee pain, right foot pain, epilepsy, dizzy spells, and back pain are considered "severe" under the regulations, but that these medically determinable impairments do not meet or medically equal one of the listed impairments. (R. at 22.) The ALJ further found that the plaintiff has the residual functional capacity to perform less than a full range of light work and is unable to perform any of her past relevant work. (R. at 23.) Nonetheless, the ALJ concluded that Testerman has the ability to perform a significant range of light work and is thus not under a disability. (R. at 23.)

After the ALJ rendered his decision, on July 9, 2004, Lillian H. Ogle, a licensed clinical social worker, issued a summary of the plaintiff's psychotherapy treatment from July 11, 1995, through June 6, 1996. (R. at 205A.) The report indicates that the plaintiff was referred to Ogle for panic disorder with agoraphobia and fear of being alone. (*Id*.) Ogle noted that the plaintiff suffered from depression, lack of motivation, low energy, low motivation, and sleep disturbance. (R. at 205A-B.) The plaintiff's diagnosis was Axis I major depressive disorder, panic disorder with agoraphobia, Axis II personality disorder, Axis III seizure disorder.

- 7 -

On June 10, 2004, nearly two months after the ALJ issued his decision, Dr. McKain reported that the plaintiff was doing very poorly and was complaining of severe pain in her left knee as well as her right knee. (R. at 205C.) Her Synvisc had completely worn off, and she complained of constant pain. (*Id*.) She reported that she could not walk or stand for more than five to ten minutes at most and that her left knee had given way on several occasions. (*Id*.) Dr. McKain stated that X rays of the left knee in a standing position showed complete destruction of the medial joint and erosion into the tibial medial plateau. (*Id*.) The right knee showed marked decrease on joint space. (*Id*.) Dr. McKain indicated that the plaintiff had progressed to the point where she is a candidate for a total knee arthropcasty for her left knee and that she is no longer a candidate for synvisc injections for that knee. (*Id*.) Dr. McKain opined that she was not suited for gainful employment. (*Id*.)

In her request for review, the plaintiff submitted the post-decision reports of Ogle and Dr. McKain to the Appeals Council. The Appeals Council issued a decision in which it acknowledged this new evidence but concluded that it did "not affect the decision about whether" the claimant was disabled on or before April 22, 2004, the date of the ALJ's decision. (R. at 6.)

*II. Analysis.*

The plaintiff contends that the ALJ's decision is not supported by substantial evidence of record. Specifically, the plaintiff argues that the ALJ did not base his decision that there were a significant number of jobs that the plaintiff could perform on the correct statistics. Alternatively, the plaintiff argues that new and material evidence submitted to the Commissioner through the Appeals Council provides a basis for changing the decision of the ALJ and "good cause" for remand to the Commissioner for further consideration. For reasons explained below, I find that the newly submitted evidence does not warrant remand of the case and that substantial evidence from the record supports the ALJ's decision.

Under the regulations, the Appeals Council must consider "new and material evidence" presented after the ALJ's decision, "where it relates to the period on or before the date of the [ALJ's] decision." 20 C.F.R. § 404.970(b). There is no "good cause" requirement for consideration of such new evidence; therefore, a claimant need not explain why the relevant evidence was not presented to the ALJ. *See Wilkins v. Secretary, Dep't of Health & Human Serv.*, 953 F.2d 93, 96 n.3 (4th Cir. 1991) (en banc). If qualifying new evidence is presented, the Appeals Council must evaluate the entire record, including the new evidence. 20 C.F.R. § 404.970(b). If it finds that the ALJ's decision is contrary to the weight of the evidence currently of

record, it will then review the ALJ's decision. *Id*. The Appeals Council may thereafter adopt, modify or reverse the ALJ's decision, or it may remand the case to the ALJ. See 20 C.F.R. §§ 404.970(b), .979.

In the present case, the Appeals Council found that the reports from both Ogle and Dr. McKain did not affect the decision about whether she was disabled at the time of the ALJ's decision because both contained "new information about a later time." (R. at 6.) This conclusion is correct with respect to the report of Dr. McKain, which summarizes an office visit on June 10, 2004, almost two months after the ALJ's decision. Thus, under the regulations, this report need not be considered. *See* 20 C.F.R. § 404.970(b).

Ogle's report, however, dealt with psychotherapy treatment from July 11, 1995, through June 6, 1996, and thus "relates to the period on or before the date of the [ALJ's] decision." 20 C.F.R. § 404.970(b). Nonetheless, this report is not material and therefore the Appeals Council did not err in its conclusion that it would not affect the decision as to whether Testerman was disabled during the relevant time period. It is well established that the Appeals Council is only required to consider evidence submitted with the request for review in deciding whether to grant review when the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. *Wilkins*, 953 F.2d at 95-96 (quoting *Williams v.*

- 10 -

*Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. *Id*. at 96. Here, the report is by a licensed clinical social worker, which is not listed as an acceptable medical source under the regulations. *See* 20 C.F.R. § 404.1513(a). Furthermore, all of Ogle's opinions were based on subjective symptoms without supported medical findings. Thus, there is not a reasonably possibility that this evidence would have changed the outcome and it does not provide grounds for remand of this case.

Finally, I find that even considering the evidence presented to the appeals counsel, there is substantial evidence in the record to support the ALJ's decision that Testerman was not under a disability as of April 22, 2004. The medical evidence supports the finding that the plaintiff could perform a limited range of light work. Dr. Winter reported that the plaintiff's main problems were her weight and arthritis and that her strength was full albeit limited by pain. The state agency physician, Dr. Hays, opined that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk or sit about six hours in an eight hour day. He ultimately concluded that the plaintiff could perform a significant range of medium work activity. Even the plaintiff's treating physician opined that she could lift up to ten pounds occasionally, stand or walk for two hours in an eight-hour day, and sit for

- 11 -

six hours in an eight-hour day. In addition to the medical evidence, the plaintiff's own activities also support the finding that she is capable of performing a limited range of light work. The plaintiff indicated that she cooked, washed dishes, swept the floor, dusted, did the laundry, and shopped for groceries. (R. at 74-75.) Additionally, the Social Security claims representative who conducted a face-to-face interview with the plaintiff noted that she had no difficulty sitting, standing, reading, understanding, concentrating, talking, answering, writing, or with her coherency. (R. at 113.)

Plaintiff takes issue with the fact that the ALJ, after finding that the plaintiff could perform a limited range of light work and consulting with the VE at the administrative hearing, misstated the statistical figures cited by the VE. Specifically, the plaintiff notes that the ALJ stated that there were 98,000 jobs in the regional economy and 7,411,000 in the national economy that the plaintiff could perform when the VE actually stated that, because the plaintiff could only perform a limited range of light work, this number would be reduced by forty percent. Even with this reduction taken into account however, there would still be approximately 39,200 jobs in the regional economy which the plaintiff could perform. Therefore, I find that substantial evidence from the record supports both the ALJ's conclusion that there are a significant number of jobs that the plaintiff could perform and his ultimate decision that the plaintiff is not disabled.

*IV. Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted. An appropriate judgment will be entered.

DATED: March 23, 2006

/s/ JAMES P. JONES
Chief United States District Judge